IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROCHELLE HAYNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-07-1201-HE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Rochelle Haynes seeks judicial review of a denial of benefits by the Social Security Administration ("SSA"). The Court should affirm the SSA's decision.

## I.    BACKGROUND

Ms. Haynes applied for insurance benefits and supplemental security income based on an alleged disability. Administrative Record at pp. 47-49, 166-68 (certified Nov. 27, 2007) ("Rec."). A hearing took place,[1] and an administrative law judge found no disability in light of Ms. Haynes' capacity to return to her past work.[2] The Appeals Council declined jurisdiction,[3] and the present action followed. Ms. Haynes alleges:

- error at step two,

---

[1]    *See* Rec. at pp. 177-99.

[2]    Rec. at pp. 12-16.

[3]    Rec. at pp. 2-4.

- failure to consider certain evidence in the assessment of residual functional capacity, and

- failure to develop the record.

II.     STANDARD OF REVIEW

The Court's review entails only a determination of whether the SSA's decision is based on substantial evidence and the correct legal standard.  *See Emory v. Sullivan*, 936 F.2d 1092, 1093 (10th Cir. 1991).  Evidence is substantial if it is greater than a scintilla.  *See Sisco v. United States Department of Health & Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). If the SSA's decision lacks substantial evidence or is based on an incorrect legal standard, reversal is necessary.  *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). However, a court may not reweigh the evidence or substitute its judgment for that of the SSA.  *See Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir. 1992).

III.    STEP TWO

According to Ms. Haynes, the administrative law judge erred at step two through a failure to identify the nature and length of her severe impairments.  Even if the Plaintiff were correct, however, the alleged errors would have been harmless.

In the decision, Judge Bennett noted "a history of some episodes of pulmonary hypertension resulting in mitral regurgitation, heart failure, electrolyte disorders, and an isolated event of renal failure and hyperthyroidism . . . ."  Rec. at p. 16.  The Plaintiff states that because the judge proceeded beyond step two, he "implicitly" found that some of the

impairments were severe. Plaintiff's Opening Brief at pp. 3-4 (Feb. 19, 2008). The Plaintiff's sole complaint at this step is that the judge did not say which of the impairments were severe or how long they had lasted. But the omission could not have affected the outcome.

Even if the judge had identified the severe impairments and stated their duration, he would have had to proceed to the remaining steps to determine the existence of a disability. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920a(4) ("If we cannot find that you are disabled or not disabled at a step, we go on to the next step."). At those steps, the judge would have had to consider the limiting effects of all impairments regardless of their severity. *See* 20 C.F.R. §§ 404.1545(c), 416.945(c).

Even though the administrative law judge did not determine whether the conditions were severe or how long they lasted, he did consider steps three and four, as required. Rec. at pp. 3-5. In these circumstances, the Court should conclude that any error at step two would have been harmless.[4]

---

[4]      *See Stokes v. Astrue*, 2008 WL 1766788, Westlaw op. at 2 (10th Cir. Apr. 18, 2008) (unpublished op.) (holding that a failure to consider a pain disorder at step two did not constitute reversible error because once the administrative law judge had found a medically severe impairment, he had to consider the limiting effects of all impairments in connection with the residual functional capacity); *Rockmore v. Astrue*, Case No. CIV-05-1505-C, slip op. at 5 (W.D. Okla. Mar. 27, 2007) (unpublished report and recommendation by magistrate judge) (stating that reversible error would not have taken place even if the administrative law judge had failed to express the severity of combined impairments because she had proceeded to consider the remaining steps), *adopted* (W.D. Okla. Apr. 30, 2007) (unpublished order by district judge); *accord Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (stating that any error in the failure to identify bursitis as a severe impairment at step two would have been harmless because the administrative law judge had considered limitations from the impairment at step four); *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987) (stating that an alleged failure to consider a cervical condition as

IV.     THE RESIDUAL FUNCTIONAL CAPACITY

Ms. Haynes also alleges a failure to consider the following evidence when the administrative law judge assessed the residual functional capacity:

- diagnoses of primary pulmonary hypertension and heart failure and

- indications of an enlarged heart, heart valve disorders, and abnormal electrocardiogram findings.[5]

---

a severe impairment would not have constituted reversible error because the agency had found other severe impairments and had considered the ability to perform substantial gainful activity).

[5]     In this portion of the Plaintiff's opening brief, Ms. Haynes quotes various Tenth Circuit cases regarding:

- the administrative law judge's duty at step three,

- his duty to describe the maximum amount of work-related activities that a claimant can perform, and

- reliance on evaluations by state agency physicians.

But the Plaintiff has not articulated any argument regarding the application of these cases to the present action.

The Court should reject this argument, as Ms. Haynes has not identified any functional limitations caused by the alleged impairments which would impede her ability to work. *See McAnally v. Astrue*, 241 Fed. Appx. 515 (10th Cir. July 23, 2007) (unpublished op.).[6]

## V.    DEVELOPMENT OF THE RECORD

The Plaintiff also alleges that the administrative law judge had failed to develop the record with regard to her primary pulmonary hypertension. According to the Plaintiff, Judge Bennett should have sought an opinion from a medical expert regarding satisfaction of a listing and related functional limitations. The Court should reject these arguments.[7]

---

[6]      In *McAnally v. Astrue*, the administrative law judge acknowledged the presence of multiple severe impairments, including hypertension, loss of vision, and skin problems. *See McAnally v. Astrue*, 241 Fed. Appx. at 517. Following the denial of benefits, the plaintiff argued that the administrative law judge had failed to include all of her functional limitations in the assessment of residual functional capacity. *See id*. at 518. The Tenth Circuit Court of Appeals rejected the argument, reasoning in part that the plaintiff had failed to identify any functional limitations that should have been added to the evaluation of residual functional capacity as a result of the alleged limitations. *Id*.

[7]      In this portion of her brief, the Plaintiff makes various additional assertions, but without explanation.

For example, in summarizing the medical evidence, the judge denied confirmation of "persistent heart failure" or "heart valvular disease." Rec. at p. 14. The Plaintiff points to several records, suggesting that they would have conflicted with the judge's characterization of the medical evidence. But the Plaintiff does not state how the alleged error would have affected the outcome.

Ms. Haynes also asserts: "There is no indication that her primary pulmonary hypertension, her panhypopituitaryism or her hyperthyroidism are conditions that are temporary." Plaintiff's Opening Brief at p. 8 (Feb. 19, 2008). But the administrative law judge did not state that the conditions were temporary and the Plaintiff does not otherwise say whether she regarded the statement as error. *See* Rec. at pp. 12-16.

A.      Duty to Develop the Record

The administrative law judge must ensure that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993). "It is the [administrative law judge's] duty to investigate the facts and develop the arguments both for and against granting benefits . . . ." *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (citation omitted). Development of the record may entail a consultative examination, which may be necessary when the medical evidence is inconclusive or in direct conflict.[8]

B.      Step Three

Ms. Haynes argues that consideration of Listing 3.09 required use of a medical expert. The argument lacks merit in light of the absence of evidence to suggest Ms. Haynes had met or equaled the listing.

At step three, the plaintiff bears the burden to present evidence that her impairment met or equaled a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990). Ms. Haynes "does not contend that she [had met] the Listing . . . ." Plaintiff's Opening Brief at p. 5 (Feb. 19, 2008). Thus, a medical expert would be necessary only if:

- the administrative law judge believed that the symptoms, signs, or laboratory findings might have equaled a listing or

---

[8]      *See Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997); *see also* 20 C.F.R. §§ 404.1512(f), 416.912(f) ("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense.").

- he obtained medical evidence which he believed could have changed the opinion of a state agency physician regarding the equivalence to a listing.[9]

In Listing 3.09, a finding of "[c]or pulmonale secondary to chronic pulmonary vascular hypertension" requires:

- clinical evidence of cor pulmonale and

- arterial hypoxemia or a mean pulmonary artery pressure greater than 40 mm/HG.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.09.

Under this listing, "cor pulmonale" requires evidence of right ventricular failure, which can be documented by laboratory findings of an early diastolic right-sided gallop on auscultation.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.00(G).  Some of this evidence did exist.  Rec. at pp. 85, 107, 113, 119.  But Ms. Haynes has not presented any evidence of arterial hypoxemia or a mean pulmonary artery pressure exceeding 40 mm/HG.

In support of her argument, the Plaintiff points to:

- a diagnosis of primary pulmonary hypertension,

- right heart failure,

- right ventricular enlargement, and

- systolic pulmonary artery pressure of 50 mm/HG.

---

[9]     *See* Social Security Ruling 96-6p, Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence, 1996 WL 374180, Westlaw op. at 3-4 (July 2, 1996).

But these findings do not suggest arterial hypoxemia or a mean pulmonary artery pressure greater than 40 mm/HG.

First, Ms. Haynes cites a systolic artery pressure of 50 mm/HG.[10] But this citation is misplaced because "systolic artery pressure" differs from "mean artery pressure." A group of physicians explained the difference between the two terms:

> [Mean pulmonary artery pressure] reflects the steady component of flow and the functional status of the distal (resistive) pulmonary vasculature, while [systolic pulmonary artery pressure] is expected to encompass the pulsatile component of arterial load, which includes the characteristics of right ventricular ejection and the characteristics of the proximal (elastic) pulmonary arteries and wave reflections.

Chemla, Castelain, Humbert, Hebert, Simonneau, Lecarpentier, & Herve, *New Formula for Predicting Mean Pulmonary Artery Pressure Using Systolic Pulmonary Artery Pressure*, 126 *Chest Journal* 1313, 1314 (Oct. 4, 2004) (footnotes omitted).[11] The Plaintiff has not presented evidence of a mean pulmonary artery pressure exceeding 40 mm/HG.

---

[10]   Without citation to the record, the Plaintiff referred to an echocardiogram conducted on March 25, 2005. Plaintiff's Opening Brief at p. 5 (Feb. 19, 2008). Ms. Haynes apparently intended to refer to page 103, which related to an echocardiogram taken two days earlier. The result was a systolic artery pressure of 50 mm/HG. *See* Rec. at p. 103.

[11]   Studies have led to various ways of deriving mean pulmonary artery pressure from systolic pulmonary artery pressure. For example, one study computed "mean pulmonary artery pressure" by taking one-third of the difference between the systolic pulmonary artery pressure and the diastolic pulmonary artery pressure and adding the diastolic pulmonary artery pressure. *See* Scapellato, Temporelli, Eleuteri, Corra, Imparato, & Giannuzzi, *Accurate Noninvasive Estimation of Pulmonary Vascular Resistance by Doppler Echocardiography in Patients with Chronic Heart Failure*, 37 J. American College of Cardiology 1813, 1814 (June 1, 2001). Another study resulted in a proposal to compute mean pulmonary artery pressure by multiplying the systolic pulmonary artery pressure by 0.61 and adding two millimeters of Mercury pressure. Chemla, Castelain, Humbert, Hebert, Simonneau, Lecarpentier, & Herve, *New Formula for Predicting Mean Pulmonary Artery Pressure Using Systolic Pulmonary Artery Pressure*, 126 *Chest Journal* 1313, 1315 (Oct. 4, 2004).

Second, "arterial hypoxemia" is a deficient amount of oxygenation in the arteries[12] and is measured by the levels of carbon dioxide and oxygen pressure in the blood.[13]  The record contains no evidence of arterial hypoxemia.

No evidence existed regarding the equivalence of the medical data to Listing 3.09, and Judge Bennett apparently did not believe that the impairments could have equaled a listing. As a result, the administrative law judge had no duty to obtain testimony by a medical expert. *See Christian v. Apfel*, 188 F.3d 518, 1999 WL 559921, Westlaw op. at 2 (10th Cir. Aug. 2, 1999) (unpublished op.) (no error in the omission of a medical expert on the meeting of a listing because of the absence of evidence for the claimant).

C.     Functional Limitations Related to the Pulmonary Hypertension

Ms. Haynes argues that the administrative law judge should have further developed the record on her ability to work with primary pulmonary hypertension.  The Court should reject this claim because:

- the record had been sufficiently developed and

- it did not reveal any functional limitations related to primary pulmonary hypertension which would have affected the ability to work.

In April 2005, an echocardiogram was performed and Ms. Haynes was diagnosed with pulmonary hypertension.  *See* Rec. at pp. 89, 99.  The diagnosis was confirmed following

---

[12]     *See Dorland's Illustrated Medical Dictionary* 129, 812 (28th ed. 1994) (defining "arterial" as "pertaining to an artery or to the arteries" and "hypoxemia" as "deficient oxygenation of the blood").

[13]     *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 3.02(C)(2), 3.09(B).

9

additional tests in May and August 2005.  *See id.* at pp. 83-88, 95.   A March 2006 electrocardiogram stated: "[A]bnormal T, consider ischemia."  *Id.* at p. 124.  On August 16, 2006, the Plaintiff's treating nurse stated: "I feel that at this time her heart disease and endo disorders are outside my scope of practice and she needs to be seen by Endo and Cardio." *Id.* at p. 148.  On August 31, 2006, the Plaintiff visited a cardiovascular specialist, who performed nuclear myocardial perfusion imaging.  This test revealed "[b]orderline non-specific ST and T changes" and "[n]o ischemia."  *Id.* at p. 158.

According to Ms. Haynes, the record should have been further developed with regard to her ability to function with primary pulmonary hypertension.  For example, she argues that development could have taken place through the opinion of a medical expert.  But the record had been fully developed, as the Plaintiff had undergone various tests and evaluation by a cardiologist.

Ms. Haynes does not identify any functional limitations resulting from the primary pulmonary hypertension,[14] and none appears in the medical record which might have alerted Judge Bennett to the need for further information.  As a result, the administrative law judge did not inadequately develop the record with regard to this condition.  *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (rejecting a plaintiff's allegations of a failure

---

[14]      *See supra* p. 5.

to develop the record when the "claimant [did] not allege-and the medical evidence [did] not suggest-functional limitations flowing from the [alleged condition]").[15]

## VI.   RECOMMENDATION AND NOTICE OF THE RIGHT TO OBJECT

The Court should affirm the SSA's decision.

Any party may file written objections with the Clerk of the United States District Court. *See* 28 U.S.C. § 636(b)(1) (2000). The deadline for objections is July 17, 2008. *See* W.D. Okla. LCvR 72.1. The failure to file timely objections would result in waiver of the right to appeal the suggested ruling. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

## VII.   STATUS OF THE REFERRAL

The referral to the undersigned is terminated.

---

[15]   The Tenth Circuit Court of Appeals addressed seemingly similar circumstances in *Hawkins v. Chater*, 113 F.3d 1162 (10th Cir. 1997). There electrocardiogram test results indicated abnormal ST & T waves and "possible inferior ischemia." *Hawkins v. Chater*, 113 F.3d at 1166. The federal appeals court held that these results should have alerted the administrative law judge to the need for further testing with regard to the plaintiff's allegations of disabling hypertension and chest pain. *Id.* at 1169.

Unlike the plaintiff in *Hawkins*, Ms. Haynes had been sent for further tests following "abnormal" electrocardiogram findings. The nuclear myocardial perfusion imaging had eliminated the possibility of ischemia and indicated only "[b]orderline non-specific ST and T changes," which did not appear to cause any particular work-related limitations. *See supra* p. 10 (quoting Rec. at p. 158).

Entered this 27th day of June, 2008.

Robert E. Bacharach
United States Magistrate Judge